IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOY VANMETER,

    Plaintiff/Counter-Defendant,

v.

                                                                     CV 18-0970 RB/JHR

MICHAEL BRIGGS,

    Defendant/Counterclaimant.

# **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on non-parties Board of Regents of the University of New Mexico ("UNM") and University President, Garnett S. Stokes; Executive Vice-President and Chancellor for Health Sciences, Dr. Paul Roth; Executive Vice-Chancellor for Health Sciences and Vice-Chancellor for Research, Dr. Richard Larson; Vice President for Human Resources, Dorothy Anderson; and, OEO Director and Interim Chief Compliance Officer, Francie Cordova's (collectively "UNM Executives")[1] Motion for Protective Order and to Quash Deposition Subpoenas of UNM Executives [Docs. 59 (Motion), 60 (Memorandum Brief in Support)], filed August 19, 2019, and Defendant Michael Briggs' Motion to Compel Depositions of UNM Witnesses and for Order to Show Cause [Doc. 79], filed September 13, 2019. The Motions address the same issue: whether the Court should compel the depositions of the UNM Executives because they have information which is relevant to the parties' claims or defenses; or, instead, quash Briggs' subpoenas and issue a protective order on the basis of the "apex doctrine" because none

---

[1] The Motion was initially also brought on behalf of UNM School of Medicine/Orthopaedic & Rehabilitation Department Administrator, Gail Case. [*See* Doc. 59, p. 1]. However, on August 27, 2019, Ms. Case filed a notice that she was withdrawing her objections to Mr. Briggs' request to depose her because he demonstrated that she "has unique personal knowledge regarding the effect that the sexual assault at issue in this case had on Plaintiff VanMeter's emotional state and work performance." [*Id.*, p. 2]. As such, this Memorandum Opinion and Order will not address the subpoena to Ms. Case.

1

of the UNM Executives have "unique personal knowledge of the matter in dispute." [*See* Doc. 59, p. 1]. Having considered the parties' arguments and all pertinent authority, the Court will **deny** the UNM Executives' Motion and **grant** Briggs' Motion in part.

I. **BACKGROUND**

Claiming that Briggs drugged and raped her on October 14, 2016, Plaintiff Joy VanMeter filed suit against Briggs in New Mexico state court. [*See generally* Doc. 1-1]. In her Complaint, VanMeter raises six claims: Count I - Negligence; Count II - Negligence Per Se; Count III - Battery; Count IV - Intentional Infliction of Emotional Distress; Count V - Negligent Infliction of Emotional Distress; and, Count VI - Loss of Consortium and Household Services. [*Id.*]. After removing the case to federal court, [Doc. 1], Briggs answered and filed counterclaims against VanMeter. [*See generally* Doc. 3]. Those counterclaims include: Count I - Defamation; Count II - Malicious Abuse of Process; Count III - Spoliation of Evidence; Count IV - Intentional Interference with Prospective Business Relations; and, Count V - Intentional Infliction of Emotional Distress. [*Id.*].[2] Pertinent here, Briggs states that VanMeter's allegations and subsequent actions caused the termination of his employment at UNM, where both worked. [*See id.*, ¶¶ 48, 72, 81]. VanMeter answered Briggs' counterclaims, asserting *inter alia* that they are barred by "estoppel, collateral estoppel, res judicata, waiver, and unclean hands" as well as by Briggs' failure to mitigate his damages. [*See* Doc. 5].

As is standard practice, the Court issued an Initial Scheduling Order directing the parties to file a Joint Status Report and Provisional Discovery Plan ("JSR"). [Doc. 7]. The parties filed their JSR, and, as directed, listed witnesses they intended to offer in support of their respective claims and defenses. [*See* Doc. 10, pp. 6-12]. Pertinent here, VanMeter listed as witnesses various

---

[2] Briggs also originally brought a claim for "Prima Facie Tort," which has since been dismissed by presiding District Judge Brack. [*See* Doc. 56].

UNM employees, including Ms. Cordova and President Stokes. [*Id.*, pp. 9-10]. VanMeter represented in the JSR that Ms. Cordova and President Stokes would be able to testify about the complaint VanMeter made to the UNM OEO regarding Briggs' conduct, the investigation that was conducted, the findings made by OEO, the outcome of the investigation, and the outcome of VanMeter's appeal to President Stokes. [*Id.*].

At this juncture, some background is necessary. As stated by the UNM Executives in their Motion, on October 27, 2016, VanMeter complained to the UNM OEO that Briggs had "subjected her to non-consensual sexual conduct in violation of UNM's Sexual Misconduct Policy." [Doc. 60, p. 7]. UNM OEO investigator Laura Vele Buchs (who no longer works for UNM) investigated VanMeter's claims through in-person interviews of VanMeter, Briggs and other witnesses. [*Id.*]. After conducting her investigation, Ms. Vele Buchs concluded that it was more likely than not that Briggs engaged in non-consensual sexual conduct with VanMeter on October 14, 2016, but that such conduct did not create a hostile work environment for VanMeter and so did not violate UNM policy. [*Id.*]. Ms. Cordova, in her capacity as OEO director, reviewed and approved Ms. Vele Buchs' findings and conclusions. [*Id.*].

Ostensibly unsatisfied with this result, and in apparent "accordance with UNM policy," VanMeter appealed Ms. Cordova's decision to President Stokes. [*Id.*]. President Stokes reviewed the written record and reversed the OEO's determination that Briggs' conduct did not violate UNM policy. [*Id.*]. Specifically, "President Stokes instructed the OEO to find such conduct did result in a hostile work environment for Plaintiff VanMeter in violation of UNM policy." [*Id.*]. Briggs did not appeal President Stokes' decision, and the OEO matter closed. [*Id.*, p. 8]. In light of President Stokes' decision, Briggs' policy violation was referred to Dr. Roth – the Executive Vice President and Chancellor for Health Services and the top of Briggs' supervisory chain – to determine whether

3

disciplinary action was appropriate and, if so, the appropriate level of discipline. [*Id.*]. Dr. Roth, aided by Ms. Anderson (the Vice President for Human Resources), made the ultimate decision to terminate Briggs' employment with UNM. [*Id.*]. Briggs has since appealed his termination resulting in a Peer Review Hearing (for which there is no formal discovery process), which was conducted the week of September 16-20, 2019. [*Id.*, p. 9].

Briggs now seeks to depose all of the aforementioned UNM Executives, as well as Executive Vice-Chancellor for Health Sciences and Vice Chancellor for Research, Dr. Richard Larson, who was Mr. Briggs' direct supervisor at the time of the alleged assault. [*Id.*, p. 8]. To this end, Mr. Briggs served subpoenas on the UNM Executives, as well as other UNM employees.[3] [*Id.*, pp. 9-11]. The UNM Executives responded by filing their Motion for Protective Order and to Quash on August 19, 2019. [*See generally id.*].

In their Motion, the UNM Executives assert that they are entitled to protection under the "apex doctrine" as high-level UNM employees who have no unique personal knowledge of any matter at issue in this lawsuit. [*Id.*, pp. 14-15]. Alternatively, the UNM executives argue that their knowledge is irrelevant to the issues in this lawsuit. [*Id.*, pp. 17-19]. Finally, the UNM executives contend that Briggs "seeks to depose the UNM Executives for improper purposes[,]" [*id.*, p. 19], specifically, that Briggs is attempting to improperly use the discovery process in this case to prepare for his Peer Review Hearing or in anticipation of filing a wrongful termination lawsuit against UNM. [*Id.*, pp. 19-22]. Finally, the UNM Executives assert that "sitting for depositions

---

[3] The Court will not recount the parties' meet and confer attempts or discuss Briggs' decision to serve the subpoenas on the Office of University Counsel, rather than on the targets of the subpoenas. The parties agree that UNM "accepted service of the same on behalf of each deponent." [Doc. 60, p. 11]. The parties could have worked more cooperatively in attempting to coordinate and schedule the depositions, but that is not relevant now that the UNM Executives have moved the Court to quash the subpoenas and preclude their depositions.

4

creates a severe hardship" for them. [Doc. 86, pp. 11-12]. For these reasons, they ask the Court to quash Briggs' subpoenas and enter a protective order precluding him from taking their depositions.

Briggs argues that the UNM Executives' testimony is directly relevant to his claims and VanMeter's defenses. [*See* Doc. 19, p. 25]. In addition to the knowledge that the UNM Executives admit they have, Briggs asserts: Ms. Cordova supervised the OEO investigation and was one of three OEO officials to approve the initial report finding that Briggs did not violate UNM policy (the other officials have since resigned from UNM), [*see* Doc. 79, p. 16]; President Stokes reversed the OEO's decision without providing him an opportunity to respond, [*id.*, p. 18]; Dr. Roth and Ms. Anderson can both testify regarding Dr. Roth's decision to terminate Briggs as well as how UNM's practices and policies were applied against him, [*id.*, pp. 18-19]; and, Dr. Larson can testify to Briggs' work history, lack of prior complaints, and the fact that he would not have been fired but for VanMeter's accusations. [*Id.*, p. 19]. Thus, Briggs argues, the UNM Executives have unique personal knowledge which is relevant to the claims and defenses in this case. [*Id.*, p. 25]. Briggs further argues that he should not be precluded from conducting discovery in this lawsuit simply because it is also relevant to his Peer Review Hearing, [Doc. 80, p. 8], and points out that the UNM Executives have presented no evidence that sitting for the requested depositions would cause severe hardship. [Doc. 94, p. 9]. For all of these reasons, Briggs asks the Court to grant his Motion and deny the UNM Executives' Motion, as well as to award him his attorneys' fees for litigating the instant dispute, and to hold the UNM Executives in contempt for refusing to comply with the subpoenas. [*See* Doc. 79, p. 26; Doc. 94, p. 11].

For their part, the UNM Executives assert that sanctions are "wholly unwarranted" in these circumstances because they have presented "legitimate good-faith arguments" in opposition to Briggs' subpoenas. [*See* Doc. 86, pp. 12-14].

## II. **LEGAL STANDARDS**

Federal Rule of Civil Procedure 45 governs subpoenas directed at nonparties to litigation. *See generally* Fed. R. Civ. P. 45. Under the Rule, the issuing court must quash or modify a subpoena that fails to allow reasonable time for compliance, requires excessive travel, requires the disclosure of privileged or other protected materials, or subjects the subpoenaed person or entity to an undue burden. Fed. R. Civ. P. 45(d)(3). Additionally, while Rule 45 does not specifically provide for lack of relevance as a reason for quashing a subpoena, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b). *Booth v. Davis*, CV 10-4010 RDR, 2011 WL 2008284 at *6 (D. Kan. 2011). Under Rule 26(b)(1):

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the propose discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under the Federal Rules, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Protective Orders are governed by Rule 26(c). *See* Fed. R. Civ. P. 26(c). Under Rule 26(c), the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). If it concludes that a protective order is warranted, the Court may take a variety of actions, including limiting the scope of disclosure or discovery to certain matters. *See* Fed. R. Civ. P. 26(c)(1)(D). "It is the party seeking the protective order who has the burden to show good cause for a protective order." *Clower v. GEICO Ins.*, CV 12-0472 JB/WDS, 2013 WL 1897832, at *6 (D.N.M. Apr. 16, 2013)

(Browning, J.). "To establish 'good cause' for a protective order under Federal Rule of Civil Procedure 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981) (citations omitted).

### III. ANALYSIS

The Court will grant Briggs' Motion to Compel and deny the UNM Executives' Motion for a Protective Order and to Quash the Subpoenas because the UNM Executives have personal knowledge which is relevant to the claims and defenses in this lawsuit. Despite not having direct contact with VanMeter, each of the UNM Executives except Dr. Larson played an active role in the OEO investigation and appeal or in Briggs' subsequent termination from UNM, and Dr. Larson can testify to Briggs' work history and performance before his termination. Therefore, each UNM Executive has relevant personal knowledge pertinent to Briggs' counterclaims against VanMeter and her defenses to those counterclaims.

**A) The UNM Executives have relevant personal knowledge.**

As noted, under the Federal Rules information is relevant if it has any tendency to make a fact more or less probable, and the fact is of consequence in determining the action. In response to VanMeter's lawsuit, Briggs claims that VanMeter's actions caused his termination from UNM, and VanMeter asserts that Briggs' claims are barred by estoppel, collateral estoppel, res judicata, waiver and unclean hands. She further asserts that Briggs failed to mitigate his damages. Therefore, information is relevant to this case if it would make it more or less probable that VanMeter's actions caused Briggs' termination from UNM. Such information is of consequence in this action because Briggs must prove that VanMeter's actions caused his termination from UNM to succeed on his claim for interference with prospective business relations and in order to prove his damages.

7

Likewise, information is relevant if it would make more or less probable VanMeter's defenses that Briggs' counterclaims are barred by some form of estoppel, or that he failed to mitigate his damages. The Court finds that each of the UNM Executives has relevant knowledge to these issues.

<u>OEO Director and Interim Chief Compliance Officer, Francie Cordova</u> – as stated, Ms. Cordova reviewed and approved OEO investigator Laura Vele Buchs' findings and conclusions that it was more likely than not that Briggs engaged in nonconsensual sexual contact with VanMeter, but that such conduct did not create a hostile work environment and, therefore, did not violate applicable UNM policy. Ms. Cordova's knowledge of the OEO investigation of Briggs and her decision to approve investigator Vele Buchs' findings and conclusions are relevant to Briggs' claim that VanMeter's accusations caused UNM to investigate and ultimately terminate him. Ms. Cordova may also have information which is relevant to VanMeter's estoppel[4] and mitigation defenses.

<u>University President, Garnett S. Stokes</u> – as stated, President Stokes reviewed the written record and reversed the OEO's decision that Briggs' conduct did not violate UNM policy because she determined it resulted in a hostile work environment for VanMeter. President Stokes' knowledge and reasons for reversing the OEO's determination are relevant to Briggs' claim that VanMeter's accusations and pursuit of her OEO report caused UNM to terminate Briggs. President Stokes may also have information which is relevant to VanMeter's estoppel and mitigation defenses.

---

[4] The UNM Executives argue that VanMeter's proposed estoppel defenses will fail and should not be relied upon by this Court in analyzing the present issues. [*See* Doc. 86, pp. 4-9]. The Court is not convinced. As Briggs argues: "[t]his is a discovery motion, not a dispositive motion. The Court should decide this motion based on the claims and defenses actually pled by the parties, not based on UNM's hopes about how the Court may later rule on the merits. Unless and until the Court rejects Plaintiffs' affirmative defense, Defendant is entitled to discovery against it." [Doc. 94, p. 6]. The Court is persuaded by this argument and will not pre-judge any of the claims or defenses before presiding District Judge Brack in ruling on the present Motions.

8

Executive Vice-President and Chancellor for Health Sciences, Dr. Paul Roth – as noted, Dr. Roth was referred Briggs' case to determine whether disciplinary action was appropriate, and he made the ultimate decision to terminate Briggs' employment with UNM. Dr. Roth's rationale for terminating Briggs' employment is relevant to his claim that VanMeter's allegations caused his termination, as well as to VanMeter's estoppel and mitigation defenses.

Vice-President for Human Resources, Dorothy Anderson – as stated, Ms. Anderson assisted Dr. Roth in the disciplinary process. Ms. Anderson's knowledge of UNM's policies and procedures and how they were implemented in Briggs' termination is relevant to his claim that VanMeter's allegations caused his termination from UNM.

Executive Vice-Chancellor for Health Sciences and Vice Chancellor for Research, Dr. Richard Larson – finally, as noted, Dr. Larson was Briggs' direct supervisor at the time of the alleged assault. Dr. Larson's knowledge of Briggs' work history is relevant to his claim that VanMeter's allegations resulted in his termination.

Therefore, because each of the UNM Executives have relevant information to the claims and defenses in this lawsuit, their testimony is presumptively reachable via subpoena. *See* Fed. R. Civ. P. 45; Fed. R. Civ. P. 26(b).

**B) The Court will not apply the "apex doctrine" to preclude the depositions of the UNM Executives.**

The "apex doctrine" is not present in the Federal Rules of Civil Procedure and neither party has presented any evidence that the Tenth Circuit has adopted its requirements. *See Van Den Eng v. Coleman Co., Inc.*, 2005 WL 3776352, at *2 (D. Kan. Oct. 21, 2005). Still, when considering the propriety of a protective order under Rule 26(c), the Tenth Circuit has recognized that a district court should consider the level of personal knowledge a high-ranking executive has, as well as whether the sought information is available from other sources, and whether sitting for a deposition

9

would impose a "severe hardship" on the executive. *See Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995). Given the overlap between these considerations and the "apex doctrine" the Court will consider whether to apply it here.

Under the "apex doctrine," "the Court may prevent the deposition of high-ranking government officials where one or more of the following circumstance(s) exist: (1) the official has no 'unique knowledge' of the subject matter; (2) another witness could provide the information sought; (3) an alternative discovery method would provide the information sought; and/or (4) the official would suffer 'severe hardship' in performing his or her official duties if forced to sit for a deposition." *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, CV 15-0850 KRS/GBW, 2019 WL 1487241, at *1 (D.N.M. Apr. 4, 2019) (quoting *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 2535067 (D. Colo. June 27, 2011)). Having considered these factors in light of the facts of this case, the Court concludes that the doctrine does not apply here.

Here, every executive has unique knowledge of the subject matter - Briggs' termination by UNM and the reasons for it. Likewise, no executive has demonstrated that the information sought can be obtained from another source, or that sitting for a deposition would result in a "severe hardship." As noted, "stereotyped and conclusory statements" will not suffice. *Gulf Oil Co.*, 452 U.S. at 102 n. 16. Therefore, the Court will not apply the "apex doctrine" to preclude the depositions in this case.

### C) The Court does not find that Mr. Briggs is abusing the discovery process in this litigation.

UNM has cited nothing other than the Court's inherent authority to manage discovery in support of its argument that Briggs' requested depositions should be prevented because the executives also have knowledge that may be relevant to his Peer Review Hearing or a potential wrongful termination lawsuit against UNM. [*See* Doc. 60, pp. 19-22]. However simply because

the UNM Executives have information that may be relevant to claims beyond those stated in this lawsuit is not a sufficient reason to preclude their depositions regarding information that is relevant to the claims and defenses at issue here. Put simply, the Court has concluded that the UNM Executives have personal knowledge which is relevant to Briggs' counterclaims and VanMeter's defenses and, absent authority to the contrary, sees no reason to preclude Briggs from conducting discovery relevant to this case. Therefore, the Court will not invoke its inherent power to quash the subpoenas or issue a protective order in these circumstances.

**D) The Court will award Briggs his attorneys' fees for litigating this dispute.**

"The rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) (quoting 1970 committee notes to Rule 37(a)(4)). As a consequence, Federal Rule of Civil Procedure 37 contains provisions that "allow, and often require" the Court to award attorney fees for discovery misconduct. *Id.* at 678. As applicable here, Rule 37(a)(5) applies to the award of expenses where a protective order is sought. Fed. R. Civ. P. 26(c)(3). Under Rule 37(a)(5)(A), the Court must award expenses against the nonmovant or its attorney if such a motion is granted unless the nonmovant's position was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied the Court instead must award expenses against the movant. Fed. R. Civ. P. 37(a)(5)(B). If a motion to compel or for protective order is granted in part and denied in part, the Court may apportion the parties' reasonable expenses. Fed. R. Civ. P. 37(a)(5)(C). Thus, "[t]he great operative principle of Rule 37(a)(5) is that the loser pays," *In re Lamey*, 2015 WL 6666244 at *4 (D.N.M. 2015) (quoting Wright, Miller & Marcus, Federal Practice and Procedure (3d ed. 2010), § 2288, n.17), unless the losing position was substantially justified or an award of expenses would

otherwise be unjust. *Id.* at *5. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (quoted authority omitted).

Briggs has demonstrated entitlement to victory on both the UNM Executives' Motion and his own Motion. As stated, under Rule 37 the Court must award attorneys' fees to the prevailing party in a discovery dispute unless the losing position was substantially justified, or other circumstances would render an award of expenses unjust. UNM's position in seeking a protective order, moving to quash Briggs' subpoenas, and in opposing his Motion to Compel was not substantially justified because each of the UNM Executives has personal knowledge of the facts of Briggs' termination which are plainly relevant to the claims and defenses in this case. Thus, the Court will award Briggs his attorneys' fees for litigating the instant dispute.

**E) The Court will not hold the UNM Executives in contempt at this time.**

Pursuant to Fed. R. Civ. P. 45(g), the Court may hold in contempt any person served with a subpoena who fails to obey the subpoena, or an order related to it, without adequate excuse. "The district court [also] has [the] 'inherent power to enforce compliance with [its] lawful orders through civil contempt.'" *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). However, civil-contempt sanctions may be imposed only "to compel or coerce obedience to a court order" or "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Id.* (citing *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992)). "[B]ecause coercive sanctions seek to avoid the 'harm threatened by continued contumacy,' the sanctions can remain only until the contemnor complies with the order." *Id.* at 1239. As the Tenth Circuit has

said, "[t]he remedial aspects outweigh the punitive considerations." *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980).

While the Court appreciates Briggs' frustration, contempt sanctions are only available to compel or coerce obedience to a court order or to compensate him for UNM's noncompliance with his subpoenas. Here, the Court is ordering the UNM executives to comply with Briggs' subpoenas, and is awarding Briggs his attorneys' fees for litigating the instant dispute. Therefore, unless the UNM Executives refuse to comply with this Order, the Court has no reason to hold them in contempt at this time.

## IV.  ORDER

For the reasons stated above, the Court finds that the UNM Executives have personal knowledge that is relevant to the claims and defenses in this lawsuit, and that they should not be protected by the "apex doctrine" in this particular case. The Court further finds that the UNM Executives' position in resisting Briggs' subpoenas was not substantially justified, entitling him to an award of his attorneys' fees. However, the Court will not hold the UNM Executives in contempt.

Wherefore, the UNM Executives' Motion for Protective Order and to Quash Deposition Subpoenas [Doc. 59] is hereby **denied** and Briggs' Motion to Compel Depositions of UNM Witnesses and for Order to Show Cause [Doc. 79] is hereby **granted in part**. The UNM Executives are hereby ordered to cooperate with Briggs to secure mutually-convenient dates for their depositions. The Court will also grant Briggs his attorneys' fees under Rule 37. As such, Briggs is hereby instructed to file a motion seeking his costs and fees associated with litigating the instant dispute. Such a motion must be filed within fourteen (14) days of the entry of this Order and must be supported by contemporaneous and meticulous time records and an affidavit establishing the reasonableness of both the hours expended and the hourly rate requested. The UNM Executives

may file a response and Briggs may file a reply in accordance with this Court's Local Rules. *See* D.N.M.LR-Civ. 7.4. In all other respects Briggs' Motion is **denied**.

SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE