# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOY VANMETER,

    Plaintiff,

v.                                                                                                                                                     No: 1:18-cv-00970-RB-JHR

MICHAEL BRIGGS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Joy VanMeter alleges that Defendant Michael Briggs sexually assaulted her at his home, where they met for a drink on October 14, 2016. Briggs argues that the interaction was consensual. This Court previously issued a Memorandum Opinion and Order (Doc. 56) addressing Plaintiff's Motion to Dismiss two of Briggs's multiple counterclaims. Before the Court today are additional motions from both parties: VanMeter's Motion to Bifurcate the Trial (Doc. 101); Briggs's Motion to Limit or Exclude Expert Testimony (Doc. 104); Briggs's Motion to Limit or Exclude Rebuttal Testimony (Doc. 156); and Briggs's Motion to Dismiss two claims (Doc. 106). The Court addresses each of these issues in turn.

## I. Background

VanMeter and Briggs met as students in the University of New Mexico's (UNM) Executive MBA program. (Doc. 3 (Answer) ¶ 7.) They remained friendly, and on October 14, 2016, VanMeter visited Briggs's home to have a drink. (Doc. 1-1 (Compl.) ¶ 5.) There, Briggs fixed her a mixture of beer and orange juice. (*Id.* ¶ 7.) VanMeter alleges that he included an unknown substance in this beverage. (*Id.* ¶ 8.) After consuming it, VanMeter felt ill and made several trips to the bathroom to vomit. (*Id.* ¶¶ 9–13.) Based on the amount she drank, VanMeter claims to have felt more intoxicated than she otherwise would have. (*Id.* ¶¶ 15–19.)

Briggs next suggested that VanMeter take a shower so that she would feel better. (*Id.* ¶ 30.) At this point, VanMeter's "consciousness was altered," and she forgot certain periods of time. (*Id.* ¶¶ 31–37.) Briggs guided her to the master bedroom and started to remove VanMeter's clothing. (*Id.* ¶¶ 40–54.) Briggs then asked if he could enter the shower as well. (*Id.* ¶¶ 56–59.) At this point VanMeter was concerned, but she had difficulty verbalizing that concern. (*Id.* ¶¶ 62; 64.) Once Briggs was in the shower, he began kissing VanMeter. (*Id.* ¶¶ 68–69.) Soon he began "performing oral sex" and "thrusting his fingers into her vagina repeatedly." (*Id.* ¶¶ 71; 75.) She was unable to get Briggs to stop but was "able to verbally state that she needed to go home." (*Id.* ¶¶ 74; 77.) VanMeter exited the shower and began dressing herself. (*Id.* ¶¶ 86–87.)

Briggs drove her home and explained to her husband, Michael Ellis, that she was "not doing very well." (*Id.* ¶¶ 89; 97.) VanMeter fell asleep for a few hours but felt ill the next morning. (*Id.* ¶ 101–05.) When she awoke on October 15, VanMeter told Ellis about the assault, and they went to the hospital. (*Id.* ¶ 106.) Despite fears that VanMeter worked with Briggs, she went to a sexual assault nurse examiner (SANE) the next day for a full examination. (*Id.* ¶¶ 109–10.) "The exam revealed bruising on both [of VanMeter's] legs" (*Id.* ¶ 111), and "three genital injuries." (*Id.* ¶ 112.) VanMeter reported the assault to the Albuquerque Police Department (APD) on October 18, 2016. (*Id.* ¶ 113.) During the investigation, Detective Daniel Spinks contacted Briggs, who eventually admitted to the sexual contact but claimed that it was consensual. (*Id.* ¶¶ 114–24.)

VanMeter alleges six counts against Briggs including: negligence (Count I); negligence per se (Count II); battery (Count III); intentional infliction of emotional distress (Count IV); negligent infliction of emotional distress (Count V); and loss of consortium and household services (Count VI).[1] (*Id.* ¶¶ 125–64.)

---

[1] The only counts addressed in this Opinion are negligent infliction of emotion distress (Count V) and loss of consortium and household services (Count VI).

In his Answer, Briggs denies these allegations. He claims that in the days prior to October 14, VanMeter and her husband were having marital difficulties. (Doc. 3 (Answer) at 22 ¶¶ 12–13.) Briggs states that he did not drug VanMeter, and that her hazy consciousness resulted from her Valium and Xoloft prescriptions taken for depression. (*Id.* at 23 ¶ 20–21.) Moreover, Briggs argues that the sexual contact was consensual, and that VanMeter showed no signs of impairment while at his home. (*Id.* at 23–24 ¶¶ 25–26.) The next day, the two exchanged text messages discussing the incident in question; VanMeter deleted the texts while Briggs retained them. (*Id.* at 24–26 ¶¶ 31; 37.) VanMeter and Ellis also deleted text messages that purported to show VanMeter's intention of cheating on her husband with Briggs. (*Id.* at 26 ¶ 37–38.) Afterward, VanMeter reported the incident to Briggs's employer, UNM. (*Id.* at 25 ¶ 34.) The university office of equal opportunity (OEO) investigated the claims, which resulted in Briggs's termination of employment with UNM. (*Id.* at 26 ¶ 39.)

Briggs raises counterclaims in response to VanMeter's Complaint including: defamation (Count I); malicious abuse of process (Count II); spoliation of evidence (Count III); intentional interference with prospective business relations (Count IV); and intentional infliction of emotional distress (Count V).[2]

## II. Bifurcation is not appropriate because the Court has discretion to structure the proceedings to ensure judicial economy.

VanMeter moves the Court to "bifurcate the trial of [her] claims against Mr. Briggs, from the trial of the counterclaims by Mr. Briggs against [her]." (Doc. 101 at 1.) The Federal Rules of Civil Procedure state that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims,

---

[2] This Court's previous Opinion (Doc. 56) denied Plaintiff's Motion to Dismiss the spoliation claim (Count III) and granted Plaintiff's Motion to Dismiss the prima facie tort claim (Count VI) (no longer listed).

3

counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Tenth Circuit has held that district courts have "broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1447 (10th Cir. 1985) (citations omitted). District courts may also bifurcate a trial "if the interests of judicial expedition and economy 'favor separation of issues and the issues are clearly separable.'" *Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004) (quoting *Angelo v. Armstrong World Indus. Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)).

According to VanMeter, bifurcation would allow the Court to hear her tort claims first, and if the Court determined that "it is more likely than not that Briggs sexually assaulted her and she suffered damages, then all of Briggs's claims in his counterclaim will fail." (Doc. 101 at 2.) Thus, the Court would not need to hear from the 20 witnesses that Briggs plans to present regarding the UNM OEO process. (*Id.*) Of the 12–15 witnesses that VanMeter plans to call, none relate to Briggs's termination from UNM or his counterclaims. (*Id.* at 3.)

Briggs on the other hand contests the Motion to Bifurcate "because the evidence on Plaintiff's claims and Defendant's counterclaims are [sic] inextricably linked." (Doc. 118 at 1.) Specifically, he states that multiple trials "would (a) be inefficient; (b) result in duplication of evidence; (c) delay and prolong proceedings; (d) needlessly increase the burden on the Court, the parties, and the witnesses; and (e) unfairly prioritize the Plaintiff's claims over the Defendant's counterclaims and defenses." (*Id.*) Multiple trials "would prejudice the Defendant by either (1) precluding him from presenting evidence and testimony important to both his defense and counterclaims; or (2) requiring him to present such evidence twice." (*Id.* at 2.) Briggs also states that VanMeter exaggerates the number of witnesses he plans to call—the actual number being closer to eight. (*Id.* at 4.)

4

The Court has discretion to structure litigation so that the issues are presented fairly and efficiently. It agrees with Briggs in the sense that some of the issues crossover between his counterclaims and defenses. In holding separate trials, the Court would not want to inappropriately limit the defenses Briggs can make because his UNM witnesses are scheduled for the second trial, or waste court resources in having these witnesses testify in two separate instances. At the same time, the Court also acknowledges that it might not need to hear Briggs's entire presentation of counterclaims if it plans to rule in VanMeter's favor on her tort claims. Nevertheless, had the Court decided to grant the Motion to Bifurcate, it would have scheduled the trials to take place back-to-back in the time already allotted during the week of April 20, 2020. But considering this is a bench trial, the Court has the ability to efficiently wade through the issues and manage the proceedings to promote judicial economy. Therefore, it will deny the Motion to Bifurcate.

### III. The Court will admit the unretained expert testimony but limit the scope of that testimony.

Briggs also attempts to limit the testimony of seven witnesses not retained as experts. (Doc. 104 at 1.) In his Motion, he claims that VanMeter "failed to properly disclose unretained experts" (*id.* at 8 (capitalization altered)), that their opinions are beyond the scope of fact witnesses (*id.* at 9), and that the witnesses "lack the necessary qualifications" (*id.* at 15 (capitalization altered).)

#### a. Disclosure

Parties must disclose expert witnesses used "at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). When these experts do not provide written reports, they must disclose "(i) the subject matter on which [they are] expected to present evidence . . . and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *see also Dale K. Barker Co., P.C. v. Valley Plaza*, 541 F. App'x 810, 815 (10th Cir. 2013) (applying this rule). Moreover, disclosure must occur in

alignment with the Court's ordered schedule. Fed. R. Civ. P. 26(a)(2)(D). If witnesses are not disclosed, then the district court has discretion to preclude the testimony. *United States v. Paup*, 933 F.3d 1226, 1232 (10th Cir. 2019). But this is not a rigid exercise. Sister circuits preclude testimony based on:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009) (citations omitted). Thus, courts have precluded testimony for severe infractions such as significant delays, *see Martinez v. Target Corp.*, 384 F. App'x 840, 847–48 (10th Cir. 2010) (precluding testimony for disclosing nine months beyond the deadline), or disclosure only days before trial, *see United States v. Adams*, 271 F.3d 1236, 1244 (10th Cir. 2001).

Briggs states that each of VanMeter's disclosures lacks detail about the content of the testimony. (Doc. 104 at 8.) In her initial disclosure before the Court-imposed May 1, 2019 deadline, she stated that no experts were retained. (*Id.* at 1.) Briggs asks the Court to limit the scope of unretained expert testimony, and at the very least, exclude Kristina Carmen, who was disclosed after the close of discovery. (*Id.* at 9.) VanMeter rejects Briggs's argument and claims that she "supplemented her expert disclosures on May 21, 2019," which "provided Defendant with the subject matter and a summary of facts and opinions formed by each of [the] unretained experts as required under Rule 26." (Doc. 130 at 1–2.)

The Court sides with VanMeter but adds qualifications. Her unretained expert disclosures lacked detail at the outset, but VanMeter appropriately supplemented these disclosures with sufficient supporting information. (*See* Doc. 104-7.) Full reports for unretained experts are not

required, but the parties must share information regarding the facts and opinions included in the testimony in accord with Rule 26. In disclosing unretained experts, the Court still demands more than a couple of sentences to give parties proper notice. VanMeter remedied this initial lack of detail quickly with the May 21, 2019 disclosure, offering more information on the testimony of these unretained experts. (Doc. 130-1.) The May 21 disclosure was beyond the expert disclosure deadline the Court set for May 1, 2019 (Doc. 14), but Briggs received the requisite information shortly after requesting it, and the delay created no prejudice in Briggs's ability to proceed with the litigation.

The Court has flexibility in how it conducts discovery and is not required to exclude witnesses that might be necessary for trial. In this instance, VanMeter disclosed the witness list by the May 1, 2019 deadline and provided supplementary information in her May 21 disclosure, well before any potential harm to the trial. As such, the Court will not exclude these unretained expert witnesses.

    **b. Scope of Testimony**

Witnesses who are not testifying as retained experts are limited to facts and personal knowledge. Fed. R. Evid. 701. Conversely, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . ." Fed. R. Evid. 702. For instance, physicians do not necessarily require the status of "retained expert" to discuss observations made during a specific treatment. *See Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). And more generally, when an "expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion

testimony is not that of a retained or specially employed expert." *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011) (citations omitted).

Briggs believes that the testimony that these unretained experts will offer should only be admitted through "full-blown expert witness reports pursuant to Rule 26(a)(2)(B)." (Doc. 104 at 9.) Four of the witnesses will discuss causation, which extends beyond their personal knowledge. (*Id.* at 9–10.) VanMeter again rejects Briggs's characterization that she intends her unretained experts to improperly act as retained experts. (Doc. 130 at 2.) She claims that each unretained expert will limit testimony only to her specific treatment. (*Id.*)

The Court sides with VanMeter but cautions counsel that these witnesses may not discuss issues outside of their personal observations. Realizing the overbreadth of her May 21 disclosure, however, VanMeter concedes to some limitations. She states that "Ms. Kristina Carmen, whom [VanMeter] *does not intend to call in her case in chief*, cannot offer opinion testimony beyond those expressed in the forensic report or outside the information she had available to her when conducting the testing." (*Id.* at 16 (emphasis added).) Dr. Cynthia Morris-Kukoski's testimony is limited to the FBI-administered urine tests. (*Id.* at 17.) The psychiatric witnesses cannot "opine as to [VanMeter's] veracity," nor can they "opine that Defendant Briggs sexually assaulted [VanMeter.]" (*Id.*) While these witnesses may be able to discuss causation and provide opinions, those opinions must be in the context of their personal treatment of VanMeter. The Court will not allow these witnesses to speculate on topics outside their respective fields and discuss issues unrelated to treatment.

To reinforce this point, the Court will discuss each witness to make the limits of their testimony explicit. First, Dr. Morris-Kukoski tested VanMeter's urine sample at an FBI laboratory. (Doc. 130 at 6–7.) She intends to discuss: (i) the variety of drugs used in sexual assault cases; (ii)

VanMeter's specific test; (iii) VanMeter's symptoms in relation to such drugs; and (iv) an opinion about whether these symptoms matched drugs commonly used in sexual assault cases. (Doc. 130-1.) This testimony exceeds the scope of personal knowledge. The Federal Rules of Evidence do not allow for non-expert testimony when the facts were not personally observed. *See* Fed. R. Evid. 703. Morris-Kukoski has had no interaction with VanMeter and only received a list of her symptoms after she performed the tests. Nor has Morris-Kukoski provided a report or CV to validate her knowledge of symptoms of drug-based sexual assault or the drugs themselves. Therefore, her testimony will be admitted, but it is confined to the specific urine test conducted and the associated results.

Second, Mary Ann Chavez was the nurse examiner who treated VanMeter. (Doc. 130 at 6.) Her testimony will include: (i) VanMeter's report to her; (ii) VanMeter's symptoms; (iii) results of the tests conducted; and (iv) opinions about the consistency of VanMeter's report with sexual violence. (*Id.*) This testimony corresponds with Chavez's personal observations and examination of VanMeter. She is not to be asked to speculate about issues outside her field, only to answer questions about her specific tests and observations. Therefore, Chavez's testimony is within the scope of unretained expert testimony.

Third, Katherine Edelson and Emilia Vigil worked with VanMeter through Rape Crisis NM. (Doc. 130-1.) Their testimony includes: their (i) "counselling, treatment, and diagnosis of VanMeter" and (ii) VanMeter's report to Rape Crisis NM. (*Id.*) These individuals treated VanMeter directly. Their psychiatric diagnoses are the result of their training and experience, but because they are not retained experts Edelson and Vigil's testimony is limited to the specific discussions with and reports about VanMeter. They may only testify about their personal observations and diagnoses.

Fourth, Dr. Paul Romo treated VanMeter at the UNM Psychiatric Center. (Doc. 130 at 6.) His testimony will include: (i) VanMeter's treatment; (ii) her symptoms; and (iii) her relationship with her husband. (Doc. 130-1.) Regarding the testimony about treatment, Romo's personal knowledge about VanMeter is admissible. Yet the Court cautions against testimony related to VanMeter's marital troubles. While this may well relate to her mental state, it is the product of second-hand information that Romo did not personally observe or discuss with VanMeter. Therefore, Romo can proceed as an unretained expert and provide testimony about VanMeter's psychological state, but he may not speculate about the argument with Ellis.

Fifth, Jennifer Ann LeClair, RN also treated VanMeter at the UNM Psychiatric Center. (Doc. 130-1.) She will testify as to (i) VanMeter's treatment; (ii) her symptoms and emotional state; and (iii) an opinion regarding the consistency of this behavior with assault. (*Id.*) Given the limited nature of this testimony, the Court believes that it fits within Rule 703. LeClair only plans to discuss her personal interactions with and observations of VanMeter; therefore, she can proceed as an unretained expert witness.

Finally, Paul Weeks provided counselling to VanMeter. (Doc. 130-1.) He plans to discuss (i) VanMeter's symptoms; (ii) her behavior; and (iii) his diagnosis of post-traumatic stress disorder (PTSD). (*Id.*) Again, given that Weeks's testimony is based on his personal knowledge and observations, the Court will permit Weeks to testify as an unretained expert witness.

c. **Qualifications and Reliability**

Courts have long held that expert testimony requires not only specialized or technical knowledge, but also methodological reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Such testimony is allowed when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Unretained expert witnesses are not required to produce full expert reports, but their testimony is limited to their personal knowledge and observations of the issues. *Meyers v. Nat'l R.R. Corp.*, 619 F.3d 729, 734–35 (7th Cir. 2010). Qualifications and methodological reliability are relevant to unretained experts to the extent that they directly inform these personal interactions and observations.

Briggs argues that VanMeter "pushes her unretained experts outside of their areas of expertise in an improper effort to obtain critical support for her claims." (Doc. 104 at 15.) Briggs also states that the opinions to be expressed by the unretained experts are derived from unreliable methodologies. (*Id.* at 18–20.) VanMeter takes issue with this characterization of her witnesses, and claims that "these experts are qualified in the areas in which [she] will have them testify, and . . . the information and bases used to form these opinions are sufficiently reliable and used by others in their fields to form professional opinions . . . ." (Doc. 130 at 3.)

Again, the Court sides with VanMeter, but offers the same caveats expressed in the discussion regarding the scope of testimony. Without rehashing the proposed testimony of each witness, the Court believes that the limitations previously discussed appropriately frame the testimony. Edelson, Vigil, Romo, LeClair, and Weeks each treated VanMeter personally in the context of a psychiatric evaluation. Chavez will testify as to her specific observations and interactions with VanMeter during her treatment after the alleged assault. Finally, Morris-Kukoski has the knowledge and background to perform the urine tests, and the Court limited her testimony exclusively to that expertise. As such, these unretained experts possess the requisite qualifications to testify about their interactions with and treatment of VanMeter.

## IV. The Court will admit the rebuttal expert testimony but will ensure that the opinions are limited to rebuttal.

Briggs filed an additional Motion to Limit or Exclude Testimony from Simone Viljoen, Ph.D, a witness for VanMeter to rebut the testimony of expert, Dusty Humes, Ph.D. (Doc. 156.) Federal Rules of Civil Procedure state that "[a]bsent a stipulation or a court order, the disclosures must be made: . . . "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), *within 30 days after the other party's disclosure*." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).

Briggs argues that "Plaintiff has never sought to show . . . good cause to extend her May 1, 2019 expert disclosure deadline . . . ." (Doc. 156 at 4.) He suggests that Viljoen's testimony includes material that bolsters VanMeter's other witnesses, so the Rule 26(a)(2)(D) timeframe does not apply. (*Id.* at 1.) Moreover, even if Rule 26(a)(2)(D) were appropriate, "that deadline would have expired at the very latest on November 14, 2019, and Plaintiff did not disclose Dr. Viljoen's report until January 6, 2020." (*Id.* at 5.) VanMeter, however, reached out to and sought agreement from Briggs's counsel to extend the deadlines. (Doc. 157 at 3–6.) Further, the Court issued an order on December 18, 2019 giving Viljoen until January 6, 2020 to produce the rebuttal report. (Doc. 119.)

The Court directs Briggs to the December 18 order. It reads that: "the Court will permit the following deadlines: January 6, 2020 for Plaintiff to produce Dr. Viljoen's report; January 27, 2020 to conduct a deposition of Dr. Viljoen; February 3, 2020 for any motion concerning Dr. Viljoen's testimony . . . ." (*Id.*) The Court was under the impression that the parties were cooperating to share information and data regarding these witnesses when VanMeter filed her Unopposed Motion to produce Viljoen's report. (Doc. 116.) That now seems doubtful. While Hume's report was disclosed on October 14, 2019, VanMeter requested the raw data so her expert

12

could better prepare the rebuttal. (*Id.*) The data was not shared until weeks later, limiting the time Viljoen had to draft the report. (*Id.*) Given the additional time needed to prepare rebuttal, VanMeter first reached out to opposing counsel and then filed her motion to extend the deadline to produce the report, (*id.*), which the Court granted in part. (Doc. 119.)

Even if the Court believed that *despite its own order*, the deadlines to produce the rebuttal report were not met, Rule 37 states that: "If a party fails to provide information or identify a witness . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified* or is *harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). The Tenth Circuit lists four factors to meet that standard: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Ellsworth v. Tuttle*, 148 Fed. Appx. 653, 665 (10th Cir. 2005) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins.* Co., 170 F.3d 985, 993 (10th Cir. 1999)).

First, Viljoen's testimony is no surprise to Briggs, as her rebuttal was the subject of much email communication between the parties as early as October 2019. The parties continually agreed on extending their own deadlines—as data from Hume was delayed despite disclosing the report—and eventually the deadline for her report was the subject of a court order. Second, the Court sees no prejudice in allowing Viljoen's testimony because of the time Briggs had to prepare for it. Third, it is difficult to see how a rebuttal witness would disrupt the trial, especially considering the limited leeway such witnesses are given. Finally, it seems that the only bad faith here belongs to Briggs, given that the Court previously addressed these deadlines. With that, the Court will allow Viljoen to testify, but the Court will strictly limit that testimony to rebuttal of Hume. The Court

will not allow Viljoen to bolster or support the other unretained expert testimony VanMeter offers. Therefore, Briggs's Motion to Limit or Exclude Testimony is granted in part and denied in part.

## V. Failure to State a Claim

Lastly, Defendant moves the Court to dismiss Count V (negligent infliction of emotional distress (NIED)) and Count VI (loss of consortium and household services (LCHS)) for failure to state a claim. (Doc. 106 at 1). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but it need not include "*detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added) (citation omitted). Inadequate pleading allows district courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the Court first accepts "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (quotation marks and citation omitted). Then it assesses whether the complaint contains "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). No probability requirement exists, but a plausibility standard still governs, which "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citation omitted). Thus, courts should only dismiss claims when it is "obvious" that there is no way to prevail under the available facts. *See Brown v. Sherrod*, 284 F. App'x 542, 543 (10th Cir. 2008) (citation omitted).

    **a. The Court will grant the Motion to Dismiss the NIED claim because New Mexico courts have limited the claimants to bystanders.**

The Supreme Court of New Mexico has defined NIED narrowly. In *Folz v. State*, the Court articulated the following standard: (1) "[t]here must be a marital or intimate family relationship between the victim and the plaintiff"; (2) "[t]he shock to the plaintiff must be severe and must

14

result in a direct emotional impact upon the plaintiff from the contemporaneous sensor perception of the accident"; (3) "[t]here must be some physical manifestation of, or physical injury to the plaintiff resulting from the emotional injury"; (4) "[t]he accident must result in physical injury or death to the victim." 797 P.2d 246, 257 (N.M. 1990) (citation omitted). In addition, the plaintiff "must prove the requisite elements of a cause of action in negligence." *Id.* at 257–58. NIED is intended to compensate bystanders who witness "traumatic event[s]" and suffer physical manifestations of "emotional shock." *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774, 777 (N.M. 1998) (citation omitted).

Briggs states that VanMeter "has not alleged that she was a bystander who suffered severe emotional shock as a result of witnessing a sudden, traumatic event that caused serious injury or death to a family member." (Doc. 106 at 2.) As a result, Count IV should be dismissed. (*Id.*) VanMeter, however, contends that New Mexico courts do not limit NIED claims to bystanders exclusively, a fact made evident in its Uniform Jury Instructions. (Doc. 115 at 1.) She claims that because UJI 13-1629 NMRA (bystander claims) exists separately from UJI 13-1630 NMRA[3] (NIED generally), courts are unsure how to treat NIED claims. (*Id.* at 1–2.) VanMeter posits that it remains an open question whether New Mexico courts would limit NIED claims to bystanders alone.

VanMeter's arguments, however, falter under closer inspection. Though novel, the case law in Briggs's direction is too great to overcome. The Supreme Court of New Mexico has essentially declared that NIED claims are limited to bystanders. Take *Fernandez*. There, the court describes NIED as a "narrow tort that *compensates a bystander* who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death *to a*

---

[3] UJI 13-1630 reads "[n]o instruction drafted."

*family member.*" 968 P.2d at 777 (emphasis added). And *Folz*'s first element of NIED requires a relationship between a victim and the plaintiff. *See* 797 P.2d at 257. If any doubts remained, a New Mexico appellate court held explicitly that "New Mexico does not recognize negligent infliction of emotional distress as a cause of action *except for bystander liability.*" *Akutagawa v. Laflin, Pick & Heer, P.A.*, 126 P.3d 1138, 1143 (N.M. Ct. App. 2005) (emphasis added) (citing *Jaynes v. Strong-Thorne Mortuary, Inc.*, 954 P.2d 45, 50 (N.M. Ct. App. 1997)). Considering that VanMeter's NIED claim does not involve bystander injury, the Court will grant Briggs's Motion and dismiss Count V.

### b. The Court will grant the Motion to Dismiss the LCHS claim because the claim must arise from the spouse.

Next, Briggs asks the Court to dismiss VanMeter's LCHS claim. (Doc. 106 at 2.) The LCHS tort "is simply the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another." *Romero v. Byers*, 872 P.2d 840, 843 (N.M. 1994). The Supreme Court has further held that,

> loss to the claimant is due only to the primary injury to that other person, and that the duty of a potential tortfeasor to a surviving spouse arises from the foreseeability of damage to the close relationship typically shared by husband and wife. The injury is foreseeable because there should be nothing surprising about a spousal relationship involving companionship, support, society, comfort, aid, and protection.

*Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 79 P.3d 836, 840 (N.M. 2003) (citations omitted). The Court has expanded the familial relationships that may give rise to the claim, *see Fernandez*, 968 P.2d at 782 (grandparents), but it has not allowed the victim of the primary injury to bring forth an LCHS claim.

Briggs argues that VanMeter's "husband is not a party and [she] does not have standing to recover damages for loss of consortium allegedly suffered by her husband." (Doc. 106 at 2.)

VanMeter "is not the real party in interest" and cannot make such a claim on behalf of her husband. (*Id.* at 3.) Again, VanMeter relies on the lack of specificity from the Supreme Court of New Mexico. (Doc. 115 at 3.) She argues further that "[i]t is clear that loss of consortium cannot exist without the claim of the injured spouse." (*Id.* at 3.)

Once more, the Court finds Briggs's position more tenable. The Supreme Court has held that LCHS claims must arise from the uninjured spouse. *Fitzjerrell* makes clear that the injury must originate from the "other person." 79 P.3d at 840. VanMeter writes that "because [LCHS] is a derivative claim, some states require the injured party to bring the claim, not the person who suffered the loss . . . ." (Doc. 115 at 4.) Her reference to *Myers v. Foltz*, No. 08-cv-2312-JWL-GLR, 2009 WL 151585 (D. Kan. Jan. 21, 2009), is persuasive, but as far as the Court can tell, no precedent allows the injured party to file the LCHS claim on the spouse's behalf exists in New Mexico. And in fact, a recent New Mexico appellate case specifically held that "the party claiming a loss of consortium is *never the same person* who suffered the tort that caused the loss of consortium." *Thompson v. City of Albuquerque*, 386 P.3d 1015, 1020 (N.M. Ct. App. 2016) (emphasis added) (footnote omitted). The Court will not follow persuasive authority from other states at the expense of clear New Mexico precedent. As such, the Court will grant Briggs's Motion to Dismiss Count VI.

      **THEREFORE**,

      **IT IS ORDERED** that VanMeter's Motion to Bifurcate the Trial (Doc. 101) is **DENIED**.

      **IT IS FURTHER ORDERED** that Briggs's Motion to Limit or Exclude Expert Testimony (Doc. 104) is **GRANTED** in part and **DENIED** in part.

      **IT IS FURTHER ORDERED** that Briggs's Motion to Limit or Exclude Expert Testimony (Doc. 156) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Briggs's Motion to Dismiss the NIED and LCHS claims (Doc. 106) is **GRANTED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**